UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SELECT RETRIEVAL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil no. 2:12-cv-00003-NT |
| | ) |
| L. L. BEAN, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER ON ADOBE'S MOTION TO INTERVENE AND STAY**

Adobe Systems, Inc. ("**Adobe**") moves to intervene and stay this suit pending the outcome of Adobe's declaratory judgment suit, currently pending against Plaintiff Select Retrieval in the United States District Court for the Southern District of California, *Adobe Systems, Inc. v. Select Retrieval, LLC*, No. 12-cv-2342 (the "**California Suit**"). Defendant L.L. Bean supports Adobe's motion, and Select Retrieval opposes it. For the following reasons, the Court **GRANTS** Adobe's motion to intervene and stay this suit.

**BACKGROUND**

Select Retrieval owns United States Patent No. 6,128,617 "Data Display Software with Actions and Links Integrated with Information" (the "**'617 Patent**"). On January 6, 2012, Select Retrieval filed suit against L.L. Bean alleging that L.L. Bean's website infringes the '617 Patent, at least in part, by using methods and/or systems that permit online customers of retail websites to select for product features, such as price, color, and size. *See* proposed First Am. Compl. ¶ 11 (ECF

No. 22-1). Select Retrieval filed an action against L.L. Bean and numerous other defendants in Delaware on September 13, 2011, but Select Retrieval voluntarily dismissed that action on January 6, 2012. *See Select Retrieval, LLC v. AmeriMark Direct LLC, et al.,* No. 1:11-cv-00812 (D. Del.). Select Retrieval next brought claims against numerous defendants for violations of the '617 Patent in federal district courts across the United States (the "**parallel suits**"). On April 20, 2012, a number of the defendants in the parallel suits filed a motion for consolidation of pretrial proceedings in the Western District of Wisconsin before the United States Judicial Panel on Multidistrict Litigation ("**MDL**"). On May 4, 2012, L.L. Bean's counsel entered an appearance in the MDL case. Centralization of the litigation was considered by the MDL panel, but on August 8, 2012, transfer was denied as premature. *In re: Select Retrieval, LLC, ('617) Patent Litigation,* MDL No. 2377 (ECF No. 18).[1]

On May 4, 2012, L.L. Bean's counsel wrote Adobe about the Select Retrieval lawsuit, stating:

> This letter should be considered notification in writing of a potential claim under Section 4.1 of the December 19, 2007 agreement between Mercado and L.L. Bean (the "Agreement"), assigned to Omniture, Inc. ("Omniture") by agreement dated December 19, 2008 (the "Assignment"). . . . It is our understanding that both Mercado and Omniture are now owned by Adobe Systems Incorporated ("Adobe").
>
> While we believe that Select's allegations and the '617 Patent should already be familiar to Adobe, it is our understanding that Select is asserting that the guided navigation feature provided on

---

[1] The MDL panel was looking at nine actions pending in nine districts involving over thirty defendants. Adobe contends that Select Retrieval has brought twelve separate actions in eleven different districts against over two hundred defendants. Mot. to Intervene and Stay at 1, n.1 (ECF. No. 27).

> www.llbean.com infringes the '617 Patent. It is our understanding that Mercado's search engine and functionality drives L.L. Bean's site navigation, and, more specifically, the functionality accused by Select.

Exhibit A to Affidavit of Steven Hammond (ECF No. 29-1) (the **"May 4, 2012 letter"**). In the May 4, 2012 letter, L.L. Bean also sought Adobe's assistance in investigating Select Retrieval's claims and asserted L.L. Bean's rights of defense and indemnification under the Agreement.

Adobe, in relevant part, develops digital marketing software that enables its merchant-customers to offer search functionality to consumers on their e-commerce websites. *See* Mot. to Intervene and Stay at 3. Adobe acknowledges that L.L. Bean is one of its customers, and Adobe has asked to intervene because this lawsuit places Adobe's digital marketing technology directly at issue. Mot. to Intervene and Stay at 2. Adobe has also asked for a stay of this lawsuit while it defends its technology against Select Retrieval's claims in its declaratory judgment action in the California Suit. *Id.*

On February 15, 2013, Adobe filed a supplemental submission in which it asserted that it has agreed to defend and indemnify L.L. Bean in this action.

## DISCUSSION

### A. Motion to Intervene

Intervention as of right is governed by Fed. R. Civ. P. 24(a), which provides:

> On timely motion, the court must permit anyone to intervene who: . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). *See Daggett v. Comm'n on Gov't Ethics and Election Practices*, 172 F.3d 104, 109 (1st Cir. 1999).

    1. <u>Timeliness of the Motion to Intervene</u>

Select Retrieval asserts that Adobe's motion to intervene in this lawsuit is not timely. This case was filed on January 6, 2012. L.L. Bean moved to dismiss the Complaint on March 12, 2012 and informed Adobe of the lawsuit in the May 4, 2012 letter. On April 20, 2012, the MDL Panel began considering centralizing the '617 Patent litigation. Understandably, Adobe waited to intervene while the MDL Panel considered whether to centralize Select Retrieval's lawsuits. The MDL Panel rejected centralization on August 8, 2012, and this Court then took up L.L. Bean's motion to dismiss. Also understandably, Adobe waited for the Court to rule on L.L. Bean's motion to dismiss before moving to intervene.

Adobe's motion to intervene was filed on November 13, 2012, two weeks after the Court ruled on L.L. Bean's motion to dismiss. Adobe does not request reconsideration of the Court's order on the motion to dismiss, and discovery has not yet begun. *See R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009) ("the status of the litigation at the time of the request for intervention is 'highly relevant'" to the determination of timeliness) (citing *Banco Popular de P.R. v. Greenblatt*, 964 F.2d 1227, 1230-31 (1st Cir. 1992)). There is neither prejudice to Select Retrieval in permitting Adobe's intervention at this time, nor inexplicable delay on Adobe's part in requesting intervention. Because of the unique procedural posture of this case, the Court considers Adobe's Motion to Intervene to be timely.

 2. Adobe's Interest in the Litigation

Select Retrieval claims that Adobe lacks the requisite interest in this case. Adobe counters that Select Retrieval has put Adobe's product at issue by an accusation made in a parallel suit that Adobe Omniture is one of the infringing technologies being used. DeMarchi Decl., Ex. H at 19 (ECF No. 28-10).[2] L.L. Bean confirms in the May 4, 2012 letter that its website's guided navigation feature, alleged to be a violation of the '617 Patent, came from Mercado/Omniture (now Adobe). By its agreement to defend and indemnify, Adobe has acknowledged that its product is responsible for any potential infringement.

Select Retrieval points to a decision from Oregon in yet another parallel suit in which the district court denied Adobe's motion to intervene and stay. *Select Retrieval, LLC. v. Altrec, Inc.*, No. 3:11-CV-1104-AA (D. Or. Jan. 29, 2013). There the court found that Adobe had not established a relationship between any legally protected interest and Select Retrieval's claim against its customer. In reaching that conclusion, the court noted that there was no evidence that Adobe was obligated to defend or indemnify its customer. The Plaintiff acknowledges that an agreement to indemnify is critically important to establishing a protectable interest. Resp. in Opp'n to Mot. to Intervene and Stay at 4. (ECF No. 33).

Because Adobe's technology drives L.L. Bean's site navigation, and because it is this technology which is alleged to infringe Select Retrieval's patent, and because

---

[2]  This claim was made in Select Retrieval's response to a motion to dismiss filed in *Select Retrieval, LLC., v. American Apparel, LLC., et al.,* No. 3-11-CV-02158-LAB-WMC (S.D. Ca. Feb. 7, 2012).

Adobe has acknowledged an obligation to defend and indemnify L.L. Bean, Adobe has established a substantial interest in this litigation.

3. <u>Potential of this Action to Impair Adobe's Interest</u>

Select Retrieval argues that Adobe's interest in this litigation will not be impaired because a finding of infringement against L.L. Bean has no preclusive effect on any of the other '617 Patent suits. *See Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1571 (Fed. Cir. 1993). Adobe responds that its interests will be impaired by piecemeal litigation and inconsistent holdings. As the district court in Oregon said, "if Adobe possesses a significant protectable interest . . . common sense dictates that Adobe's ability to protect its technology against infringement claims could be impaired by this action . . . ." *Select Retrieval, LLC. v. Altrec, Inc.*, No. 3:11-CV-1104-AA at 3 (D. Or. Jan. 29, 2013). The Court finds that Adobe has a sufficient interest in protecting its technology.

4. <u>Representation of Adobe's Interest by L.L. Bean</u>

Select Retrieval claims, finally, that L.L. Bean will adequately represent Adobe's interests in this litigation. Adobe counters that it has a unique ability to understand and defend its product against patent infringement claims. Adobe, as the developer and marketer of the allegedly infringing technology, has more at stake than L.L. Bean as a mere customer of Adobe. Although L.L. Bean's interests align with Adobe's to some degree, Adobe should be allowed to protect its own interests and defend its customers. *See e.g. Honeywell Intern. Inc. v. Audiovox*

*Commc'ns Corp.*, No. Civ. A. 04-1337-KAJ, Civ. A. 04-1338-KAJ, Civ. A. 04-1536-KAJ, 2005 WL 2465898, *4 (D. Del. May 18, 2005).

For the reasons set forth above, Adobe's motion to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2) is granted, as is its request for permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1)(B).[3]

**B. Motion to Stay**

Adobe requests that the Court stay this action pending resolution of the California Suit, contending that a stay will preserve resources and protect Adobe's interest in protecting its technology. Adobe invokes the customer suit exception to the rule that the first-filed action should take precedence. *See Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977). Select Retrieval opposes a stay, arguing that Adobe does not fit the customer suit exception and claiming that a stay will not promote judicial economy and will prejudice Select Retrieval.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Microfinancial, Inc. v. Premier Holidays Intern., Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) ("It is apodictic that federal courts possess the inherent power to stay proceedings for prudential reasons.").

---

[3] Permissive intervention requires only that the petitioner have a claim or defense that shares a common question of law or fact with the main action and that the Court consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights. The Court exercises its discretion to grant permissive intervention based on its analysis of the first and second intervention-of-right factors.

"The customer suit exception is an exception to the general rule that favors the forum of the first-filed action." *Tegic Commc'ns Corp. v. Bd. Of Regents of Univ. of Tex. Sys.,* 458 F.3d 1335, 1343 (Fed. Cir. 2006) (citations omitted). "Generally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). "The customer suit exception 'is based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement; and to guard against possibility of abuse.'" *Id.* (quoting *Kahn v. Gen. Motors Corp.,* 889 F.2d 1078, 1081 (Fed. Cir. 1989) (citation omitted)). "'The guiding principles in the customer suit exception cases are efficiency and judicial economy.'" *Spread Spectrum,* 657 F.3d at 1357 (quoting *Tegic,* 458 F.3d at 1343).

Select Retrieval argues that the customer suit exception does not apply because L.L. Bean has not agreed to be bound by a declaratory judgment action and because the California Suit will not resolve all of the charges in the instant suit. In support, Select Retrieval cites *Kahn,* 889 F.2d at 1081. In *Kahn*, the plaintiff brought a patent infringement claim and a tort claim against GM in New York relating to the use of AM stereo receivers. Thereafter, Motorola brought a declaratory judgment action in Illinois against Kahn. The New York District Court stayed its action pending the outcome of the Illinois action on the grounds that GM was a mere customer of Motorola. The Federal Circuit vacated the stay because the

8

district court had misunderstood the relationship between GM and Motorola. In *Kahn,* the plaintiff conceded that Motorola had not infringed his patent. The Federal Circuit concluded that resolution of the Illinois suit would not affect the outcome of the New York suit. In dicta, the court implied that the customer suit exception requires that the second-filed action "resolve all charges against the customers in the stayed suit," and the court found a controlling distinction in cases where the customers had not agreed to be bound by any injunction in the manufacturer's case. But the Federal Circuit, since *Kahn*, has not been so rigid. In *Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed. Cir. 1990), the Federal Circuit upheld the stay of a customer suit where the customer had not agreed to be bound by the outcome of the manufacturer's suit. The *Katz* court further remarked:

> Although there may be additional issues involving the defendants in [the customer suit], their prosecution will be advanced if [the plaintiff] is successful on the major premises being litigated in [the manufacturer suit], and may well be mooted if he is unsuccessful.

*Id.* at 1464. *See also, Spread Spectrum,* 657 F.3d at 1358 (specifically addressing *Kahn* and clarifying that "the manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer – not every issue – in order to justify a stay of the customer suits.")

Select Retrieval also argues that the customer suit exception should not apply because L.L. Bean is not a mere reseller of Adobe's product but directly infringes Select Retrieval's patent by performing the patented method. There is no question that many of the cases applying the customer suit exception involve customers who actually sell an allegedly infringing product or a product that has an

allegedly infringing component part. *See, e.g., Katz*, 909 F.2d at 1460-61 (suit against retail seller of guns with alleged patented handgrips); *Ricoh Co. Ltd. v. Aeroflex Inc.*, 279 F.Supp.2d 554, 556-57 (D. Del. 2003) (suit against tech companies that sold products incorporating alleged patent-infringing design compilers purchased from third party); *Honeywell* 2005 WL 2465898 at * 2-3 (D. Del. May 18, 2005) (suit against tech companies that sold products incorporating alleged patent-infringing LCD displays purchased from third party manufacturers). The "mere reseller" language applies neatly to those cases. In the present case, however, the patent protects a method which is not incorporated into a component part offered for resale. In this case, the patented method is used by L.L. Bean to facilitate its e-commerce. The Court does not believe that the fact that L.L. Bean is not reselling the product should be determinative. The underlying rationale for the customer suit exception is:

> the recognition that, in reality, the manufacturer is the true defendant in the customer suit. It is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, in order to avoid the damaging impact of an adverse ruling against its products.

*Codex*, 553 F.2d at 737-38. Adobe has the same interests at stake as a manufacturer of televisions or automobiles. The fact that L.L. Bean does not resell the patented technology is not fatal to application of the customer suit exception.

In this patent infringement action, Adobe, the acknowledged provider of the allegedly infringing technology, has brought an action in the California Suit seeking to have the '617 Patent declared invalid and seeking a declaration that Adobe's

technology does not infringe the '617 Patent. The outcome of the California Suit would resolve the major issues concerning the claims against L.L. Bean. Furthermore, Adobe's agreement to indemnify L.L. Bean obviates any need for L.L. Bean to agree to be bound by the California Suit.[4] It will be Adobe that is on the hook if Adobe's technology – as used by L.L. Bean – is found to infringe Select Retrieval's patent. Even if L.L. Bean's use of the allegedly patented technology independently infringes the '617 Patent, the resolution of the California Suit would still greatly simplify this case. In the interests of economy and efficiency, the Court finds it appropriate to stay this case pending resolution of the California Suit.

## CONCLUSION

For the reasons stated, Adobe's motion to intervene and stay this suit pending resolution of its declaratory judgment action, *Adobe Systems, Inc. v. Select Retrieval, LLC*, No. 12-cv-2342 (S.D. Ca.), is **GRANTED**.

SO ORDERED.

/s/ Nancy Torresen
NANCY TORRESEN
UNITED STATES DISTRICT JUDGE

Dated this 15th day of March, 2013.

---

[4] Adobe's indemnification agreement also provides some assurance that there is likely to be a sufficient case in controversy with respect to Adobe's claims against Select Retrieval in the California Suit. *See Adobe Sys. Inc. v. Kelora Sys. LLC*, No. C 11-3938 CW, 2011 WL 6101545, *3-6 (N.D. Ca. Dec. 7, 2011) (dismissing suit for failure to state a case in controversy because Adobe failed to demonstrate a duty to indemnify customers in infringement actions).